UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF ILYAS KHRAPUNOV PURSUANT TO 28 U.S.C. § 1782 FOR THE TAKING OF DISCOVERY IN FOREIGN PROCEEDINGS | Case No. 4:17-mc-80107-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART NON-PARTIES' MOTION TO QUASH SUBPOENA; ORDER STAYING COMPLIANCE**<br><br>Re: Dkt. No. 8 |

On August 24, 2017, the undersigned granted Ilyas Khrapunov's *ex parte* Application pursuant to 28 U.S.C. § 1782, and the requested subpoena was issued on August 25, 2017. (Dkt. Nos. 5 & 6.)

On October 1, 2017, Objectors and non-parties Pavel Prosyankin and John Doe ("Objectors") filed a motion to quash the subpoena. (Dkt. No. 8.)

On November 16, 2017, the Court held a hearing, and, for the reasons set forth below GRANTS IN PART AND DENIES IN PART the motion to quash the subpoena, and STAYS compliance for 15 days from the date of this order.

## I. BACKGROUND

Pursuant to 28 U.S.C. § 1782, Ilyas Khrapunov ("Khrapunov") applied *ex parte* for a subpoena to Google to obtain subscriber and location information regarding three Gmail accounts that were obtained and used in Europe. (Appl., Dkt. No. 1.) The Court granted the request on August 24, 2017, and the subpoena was issued for pr.pisemnet@gmail.com, peterpanmsk@gmail.com, and kapisam@gmail.com. (Subpoena, Dkt. No. 5 at 4.) The subpoena seeks the IP addresses and the subscriber information associated with the three Gmail accounts. *Id.*

In the application, Khrapunov claims that this information is relevant to pending litigation

in England where he is attempting to lift an order freezing his assets throughout the world and an order requiring that he testify under oath regarding his disclosure of his assets. (Appl. at 3, 7.) Khrapunov claims that the Gmail accounts were used by BTA Bank employees to arrange for the arrest of Ukrainian lawyer Olena Tyschenko, as well as for fraudulent purposes such as back-dating documents. (Appl. at 4-6.)

Since 2009, BTA Bank, formerly one of the largest banks in Kazakhstan, has pursued Khrapunov and Mukhtar Ablyazov for fraud. (Suppl. Decl. of Jeffrey L. Bornstein, "Suppl. Bornstein Decl.," Dkt. No. 17 ¶¶ 7, 15, Ex. B & G.) Thus far, English courts have confirmed in final judgments that Ablyazov stole in excess of $4.6 billion from BTA Bank ("the Bank"), and have held preliminarily that Khrapunov conspired with Ablyazov to hide Ablyazov's assets from the Bank. *See ids.*

In 2012, an English court sentenced Ablyazov to 22 months imprisonment for contempt, and he ultimately fled the United Kingdom to avoid arrest. (Suppl. Bornstein Decl., Ex. G ¶ 2; Suppl. Bornstein Decl., Ex. A ¶ 175.) Khrapunov is residing in Switzerland, and the Bank wishes to sue him in England. (Suppl. Bornstein Decl., Ex. G ¶ 2.)

Beginning in 2009, the English court issued an order freezing Ablyazov's assets throughout the world. (Suppl. Bornstein Decl., Ex. B ¶ 8.) In 2015, the Bank obtained a world-wide freezing order ("WFO") against Khrapunov, preventing him from dealing with his own assets or those he manages for Ablyazov. (Decl. of Peter M. Black, "Black Decl.", Dkt. 3 ¶ 7.) When Khrapunov previously attempted to set aside the WFO issued against him, the court found that the Bank had "a good, arguable case that Mr. Khrapunov has committed the tort of conspiracy" and that there was a real risk that, unless restrained from doing so by court order, Khrapunov would dissipate his assets to prevent the Bank from being able to enforce any judgment it might ultimately obtain. (Suppl. Bornstein Decl., Ex. C ¶ 54.)

Currently, Khrapunov has a two-day hearing scheduled for November 20 and 21, 2017, in the English court, to determine whether or not to discharge the English WFO and Cross-Examination orders against him. (Opp'n at 8.)

///

## II. LEGAL STANDARD

### A. Subpoenas pursuant to 28 U.S.C. § 1782

Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where: (1) the discovery sought is from a person or entity residing in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *See In re Republic of Equador*, No. 10-mc-80225-CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010).

A district court is not required to grant the application, but instead retains wide discretion to determine what discovery, if any, should be permitted. *See Intel*, 542 U.S. at 264; *see also Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). In exercising that discretion, the court should consider the following non-exhaustive factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65 ("the *Intel* factors").

"The burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *In re Ex Parte Apple Inc.*, No. 12-mc-80013-JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (quoting *Green v. Baca*, 226 F.R.D. 624, 653-54 (C.D. Cal. 2005) (citation omitted)).

### B. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

#### A. Request for Judicial Notice

As a preliminary matter, Objectors ask that the Court take judicial notice of several English court documents in support of their motion to quash: A) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. Mukhtar Ablyazov*, 2012 EWCA Civ 1411, arising in the Court of Appeal, Civil Division, dated November 6, 2012; B) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. (1) Mukhtar Ablyazov, (2) Syrym Shalabayev, (3) Clyde & Co. LLP, (4) Stephenson Harwood LLP, & (5) Addleshaw Goddard LLP*, 2014 EWHC 2788 (Comm), arising in the High Court of Justice, Queen's Bench Division Commercial Court, dated August 8, 2014; C) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. (1) Mukhtar Ablyazov & (2) Ilyas Khrapunov*, 2016 EWHC 230 (Comm), arising in the High Court of Justice, Queen's Bench Division Commercial Court, dated February 11, 2016; D) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. (1) Mukhtar Ablyazov & (2) Ilyas Khrapunov*, 2016 EWHC 901 (Comm), arising in the High Court of Justice, Queens Bench Division Commercial Court, dated March 23, 2016; E) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. (1) Mukhtar Ablyazov, (2) Ilyas Khrapunov, & others*, 2016 EWHC 1346 (Comm), arising in the High Court of Justice, Queens Bench Division Commercial Court, dated May 26, 2016; F) Order in the English court case *JSC BTA Bank v. (1) Mukhtar Ablyazov & (2)*

4

*Ilyas Khrapunov*, 2015 CL 549, arising in the Court of Appeal, Civil Division, and issued by the Honorable Lord Justice Longmore on November 25, 2016; and G) relevant excerpts of an Approved Judgment in the English court case *JSC BTA Bank v. Ilyas Khrapunov*, 2016 EWHC 230 (Comm), arising in the Court of Appeal, Civil Division, dated February 2, 2017. (Req. for Judicial Notice, "RJN," Dkt. No. 12; Suppl. Suppl. Bornstein Decl., Exs. A-G.)

Khrapunov did not object to the request for judicial notice. The exhibits are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Objectors' request for judicial notice.

**B. Motion to Quash**

**i. Objectors have standing to bring the motion to quash.**

As an initial matter, Khrapunov argues that Objectors lack standing to bring the motion to quash, because the burden is not on them, and they are not the email accountholders. (Opp'n at 10-12.) The Objectors argue that they have standing to move to quash the subpoena on the grounds that they claim to have used the three subject email accounts. (Mot. at 3.) Indeed, "a party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (quoting *Knoll, Inc. v. Moderno, Inc.*, No, 12–mc–80193 SI, 2012 WL 4466543, at *2 (N.D.Cal. Sept. 26, 2012)).

Here, the subpoena seeks IP addresses associated with the three Gmail addresses, and subscriber information for the three Gmail addresses. (Subpoena at 4.) Prosyankin claims to have created, used, and exercised exclusive control over kapisam@gmail.com and peterpanmsk@gmail.com. (Decl. of Pavel Prosyankin, "Prosyankin Decl.," Dkt. No. 9 ¶ 10, Ex. A; Reply Decl. of Pavel Prosyankin, "Prosyankin Reply Decl.," Dkt. No. 23 ¶¶ 3-6.) Similarly, Doe claims to have used pr.pisemnet@gmail.com in connection with his work at the Bank, and that it is possible that the account includes subscriber information that relates to him and/or that the IP addresses associated with the account would identify a location at which he accessed the

account, including his personal residence. (Decl. of John Doe, "Doe Decl.," Dkt. No. 10 ¶¶ 8-12.) Khrapunov argues that the IP address cannot, by itself, identify a particular person. (Opp'n at 15.) While true, the IP address can lead to an exact street address by furnishing the IP address to the internet service provider in order to obtain subscriber information.

As Objectors have used the three email accounts, they clearly have a personal right or privilege in the information sought to be disclosed, such as their respective IP addresses and their personal, subscriber information.

Accordingly, the Court finds that Objectors have standing to file the motion to quash.

### ii. John Doe can proceed anonymously

Khrapunov argues that John Doe should not be permitted to proceed anonymously. All of the cases cited, however, concern doe litigants rather than non-parties. (*See* Opp'n at 18.) Other courts in this district have allowed Does to challenge similar subpoenas to internet service providers. *See Donziger*, 2013 WL 4536808, at *12. Here, Doe states that he fears for his safety and has been personally threatened by Khrapunov and Ablyazov due to his role on the team investigating the theft of billions of dollars from BTA Bank. (Doe Decl. ¶¶ 6-10.) The Court is sympathetic, and, given that he is not a party to the litigation, the undersigned will permit John Doe to proceed anonymously.

### iii. Examination of the *Intel* Factors

Objectors contend that the subpoena should be quashed because two of the four *Intel* factors strongly disfavor permitting the production of documents and information sought in the subpoena. (Mot. at 12.) The Court will address those two factors below.

#### a. Whether the subpoena is unduly intrusive and burdensome

Under the fourth *Intel* factor, "requests become intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad fishing expedition for irrelevant information." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016). Here, Objectors argue that the subpoena is "unduly intrusive and burdensome," because the information it seeks is now irrelevant to Khrapunov's Discharge Applications, and could, instead, be used by Khrapunov to continue his

harassment of Objectors. (Mot. at 12-13.) Objectors held senior positions at the Bank on the asset recovery team that identified the billions of dollars purportedly laundered by Ablyazov, and, as a result, they fear for their personal safety. (Mot. at 6.) Furthermore, Khrapunov has exhibited threatening behavior in connection with the purported theft, including calling Prosyankin five days prior to the filing of the motion to quash during which Khrapunov allegedly told Prosyankin that "problems are coming for you." (Mot. at 3, 14-15; Prosyankin Decl. ¶7.) This was not the first unwanted phone call Prosyankin received. (Mot. at 15.) Doe previously experienced such pervasive harassment from Khrapunov, Ablyazov, and their associates, that he left his position at BTA Bank because of it. (Mot. at 15; Doe Decl. ¶ 6.)

In opposition, Khrapunov argues that there is no undue burden on Objectors, because the subpoena is not directed towards them. (Opp'n at 12.) As stated above, the undersigned finds that Objectors have standing to move to quash. *See* discussion *supra* Part III.B.i. Additionally, Khrapunov argues that Objectors have not demonstrated that the information sought is not relevant in the English action, when the Application states that "the information sought bears directly on Mr. Khrapunov's Discharge Applications in which he will demonstrate that BTA Bank misle[d] the English court in its *ex parte* application for the WFO and other material matters and sought the Cross-Examination Order for an abusive purpose." (Opp'n at 12-13.) Specifically, Khrapunov argues that if he can establish that Prosyankin sent the emails from peterpanmsk@gmail.com, that this would support the Discharge Applications by demonstrating that the Bank was involved in arranging for Ms. Tyschenko's arrest for the purposes of putting pressure on her to provide evidence on the Bank's behalf in the proceedings against Ablyazov and his associates. (Opp'n at 13.) Khrapunov also contends that emails from pr.pisemnet@gmail.com leaked confidential information regarding asset disclosures by Ablyazov, Khrapunov's known alleged co-conspirator. *Id.*

In their reply, Objectors acknowledge that Prosyankin has exclusive control of kapisam@gmail.com and peterpanmsk@gmail.com, and that he did not use the third account. (Reply at 8-9; Prosyankin Reply Decl. ¶ 4.) With respect to pr.pisemnet@gmail.com, it is has been confirmed by the Bank and Doe that the account was used by senior managers at BTA Bank.

7

(Black Decl. ¶ 20; Doe Decl. ¶ 8.) As such, Objectors argue that Khrapunov has now accomplished everything that he sought to achieve with his subpoena. (Reply at 9.)

### 1. *Subscriber information*

At the hearing, Khrapunov explained that he still requires the subscriber information to confirm who registered the accounts. The Court is not persuaded as to the peterpanmsk@gmail.com and the kapisam@gmail.com accounts, because Prosyankin has admitted to exclusive use and control of those accounts. As to pr.pisemnet@gmail.com, while Doe and BTA Bank have confirmed that the email account was used by senior bank officials, Prosyankin claims that he never used it. As a result, Khrapunov argues that the subscriber information is relevant, because at least one email obtained was signed "Pavel," which is Prosyankin's first name. Moreover, Khrapunov contends that Prosyankin may be part of a "confidentiality club" in the UK proceedings, such that any emails sent by him could be in violation of those confidentiality provisions, and may assist Khrapunov in his discharge applications.

Objectors argue that the threat of harassment outweighs Khrapunov's purported need for the information sought. They cite to a protective order that was entered in the U.S. District Court for the Southern District of New York on October 10, 2017 to prevent the harassment of BTA Bank and Kazakh government officials. (Reply at 13; Order, Reply Decl. of Jeffrey L. Bornstein, "Bornstein Reply Decl.," Dkt. No. 25, Ex. B at 1.) While the possibility of harassment is a valid concern, the undersigned finds that it can be ameliorated by a protective order. *See* discussion *infra* Part III.B.v. Accordingly, the Court grants the motion to quash as to the subscriber information for peterpanmsk@gmail.com and the kapisam@gmail.com, and denies it as to pr.pisemnet@gmail.com.

### 2. *IP addresses*

In regards to the IP addresses, as stated above, they can be utilized for the purposes of geolocation, and can result in finding the physical location of users. *See* discussion *supra* Part III.B.i. Since Objectors state that they used their respective email addresses at their personal residences, the undersigned finds that they have a privacy interest in their IP addresses insofar as

they lead to historical locations that they continue to frequent, such as their homes. Even so, Khrapunov's opposition does not address what utility the IP addresses could possibly provide or the relevancy to any pending litigation. At the hearing, Khrapunov explained that the IP addresses could confirm whether Prosyankin used the pr.pisemnet@gmail.com email address if the IP addresses for that account matched the IP addresses for the accounts that he admits to have had exclusive control. Prosyankin has already been the recipient of unwanted contact from Khrapunov on at least two occasions, so it is not farfetched that he would attempt to contact other individuals connected to the Bank. At the hearing, the parties agreed that Khrapunov already has Prosyankin's contact information, and knows where he lives, and Doe has moved out of the country since the relevant time period ended. Thus, the undersigned finds that entering a protective order designating the information produced as "local attorneys' eyes only" will sufficiently ameliorate Objectors' concerns while balancing Khrapnov's right to discover information potentially relevant to the foreign proceedings. *See* discussion *infra* Part III.B.v.

Lastly, the Court notes that the subpoena, as issued, is not narrowly tailored to a specific time period. (*See* Subpoena at 4.) Instead, it seeks all "IP addresses associated with the above-three Gmail accounts." *Id.* At the hearing, Khrapunov proposed that the subpoena be modified to only seek information from 2009 to 2014, which is the time period at issue in the UK proceedings. The Court finds that this is sufficiently narrowed, and, therefore, modifies the subpoena accordingly.

Based on the foregoing, the Court finds that the fourth *Intel* factor weighs in favor of quashing the subpoena. Notwithstanding, the information sought is generally relevant to the foreign proceedings, and the undersigned finds that a protective order can adequately address Objectors' concerns. Thus, the Court denies the motion to quash as to the IP addresses of the three Gmail accounts, but enters a protective order subject to the terms set forth below. *See* discussion *infra* Part III.B.v.

### b. Whether Khrapunov is attempting to use the subpoena to circumvent American and English Law and Policies that Criminalize Hacking

The third *Intel* factor asks whether the discovery request is an "attempt to circumvent

proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. "A perception that an applicant has side-stepped a less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Appl. of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

Here, Objectors contend that the subpoena is "an effort to circumvent American and English laws prohibiting hacking." (Mot. at 15.) While Objectors concede that the Gmail accounts at issue are not believed to have been hacked, they have reason to believe that all eleven emails central to Khrapunov's § 1782 Application became public only as a result of the hacking of email accounts of Kazakhstani government officials. (Mot. at 16, 10 n. 8.)

In opposition, Khrapunov argues that he is not attempting to circumvent any such laws or policies, which is evidenced by the fact that, "instead of resorting to self-help or seeking to 'hack' the alleged information at issue, [he] has sought to lawfully obtain the information through proceedings here." (Opp'n at 17.) This is well taken. The Court has no reason to believe that the discovery request is an attempt to undermine the American and English court's laws and policies criminalizing hacking. Thus, this factor is neutral.

Accordingly, the Court finds that the third *Intel* factor does not weigh in favor of quashing the subpoena.

### iv. Whether the subpoena may be quashed under Rule 45

Objectors argue that the subpoena may be quashed or modified pursuant to Federal Rule of Civil Procedure 45 on the grounds that it imposes an undue burden. (Mot. at 16.) In opposition, Khrapunov contends that the subpoena is directed at Google, such that the burden is not on the Objectors, but, rather, on Google, which has not objected. (Opp'n at 9.) While the Court generally agrees that the burden is on Google, the Court maintains the discretion to modify the subpoena under Rule 45. *See Donziger*, 2013 WL 4536808, at *4 (citation omitted). As previously

discussed, the undersigned is exercising its discretion to modify the subpoena. *See* discussion *supra* Part III.B.ii.a.2.

### v. Protective Order

To ameliorate Objectors' concerns regarding potential harassment, Khrapunov's counsel suggested at the hearing that any information or data obtained from Google could be designated "local attorneys' eyes only" for his counsel in the Northern District. This would require the law firm of Boersch Shapiro LLP to independently analyze the IP addresses for the three Gmail accounts. The firm would then furnish the results of their examination rather than any of the actual data, including IP addresses, obtained by way of this subpoena. The Court finds this designation sufficient to protect the Objectors from harassment, and orders that all information produced by Google, including subscriber information, be designated "local attorneys' eyes only," and limited to the law firm of Boersch Shapiro LLP and affiliated counsel Matthew Dirkes.[1] Counsel will be subject to contempt proceedings in the Northern District of California should the information be made available to Khrapunov or anyone else outside of the Boersch Shapiro firm, including legal counsel in other proceedings, including any case pending in this district. Khrapunov's counsel, however, shall remit a copy of all documents to Objectors' counsel within 7 days of receipt.

### IV. CONCLUSION

In light of the foregoing, the Court GRANTS IN PART AND DENIES IN PART Objectors' motion to quash. Specifically, the Court grants the motion to quash as to the subscriber information for peterpanmsk@gmail.com and the kapisam@gmail.com, and denies it as to pr.pisemnet@gmail.com. The Court denies the motion to quash as to the IP addresses for all three Gmail accounts. Notwithstanding, all information produced in compliance with this subpoena shall be designated "local attorneys' eyes only" pursuant to the limits set forth, *supra,* in Part III.B.v. The Court MODIFIES the subpoena to temporally limit the production to subscriber information and historical IP addresses from 2009 to 2014.

Additionally, and upon the request of Objectors, the Court STAYS compliance with the

---

[1] No other "affiliated counsel" shall be permitted to view the information produced without leave of court.

11

instant order for 15 days to afford Objectors the opportunity to file a motion for relief from this nondispositive order pursuant to Civil Local Rule 72-2. If the motion for relief is timely filed, the stay will remain in effect until the district court either rules on the motion or it is deemed denied. *See* Civil L.R. 72-2 (a motion for relief is deemed denied if "no order denying the motion or setting a briefing schedule is made within 14 days of filing the motion".). If a motion for relief is not filed, the stay will be lifted 16 days from the date of this order.

IT IS SO ORDERED.

Dated: November 22, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge