UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE APPLICATION OF ILYAS KHRAPUNOV

Case No. 17-mc-80107-HSG

**ORDER DENYING OBJECTORS' MOTION FOR DE NOVO DETERMINATION OF MAGISTRATE JUDGE'S RULING AND DENYING ADMINISTRATIVE MOTION TO AUGMENT THE RECORD**

Re: Dkt. Nos. 32, 33

Currently pending before the Court are two motions filed by non-parties Pavel Prosyankin and John Doe (collectively "Objectors"): first, a motion for de novo determination of a "dispositive"[1] order of a magistrate judge, Dkt. No. 32 ("Mot."); and second, an administrative motion to augment the record, Dkt. No. 33. Objectors filed the motion for de novo determination on December 6, 2017. *Id.* On February 21, 2018, Plaintiff Ilyas Khrapunov filed a response. Dkt. No. 41 ("Opp."). Objectors filed a reply on March 7, 2018. Dkt. No. 43 ("Reply"). After carefully considering the parties' arguments, the Court **DENIES** both motions.[2]

## I. BACKGROUND

Objectors' request for review arises from an underlying dispute in the English courts. To clarify the pending matter, the Court sets forth allegations made by Khrapunov and Objectors in relation to those proceedings.

### A. The English Proceeding

Khrapunov is a named defendant in *JSC BTA Bank v. (1) Mukhtar Ablyazov & (2) Ilyas Khrapunov*, Claim No. 2015 CL 549, an action before the High Court of Justice, Queen's Bench

---

[1] Whether the motion is, in fact, "dispositive" of the parties' underlying dispute is a primary disagreement between Plaintiff and Objectors.
[2] This matter is appropriate for disposition without oral argument. *See* Civil L.R. 7-1(b).

Division, Commercial Court (the "English Action"). Opp. at 7; *see* Dkt. No. 3 ("Black Decl.") at ¶¶ 1-2. In that case, BTA Bank, a state-owned Kazakhstani bank, alleges that Khrapunov and his associates conspired to breach English court orders freezing and otherwise disposing of assets belonging to one of Khrapunov's affiliates, Mukhtar Ablyazov. *See id.* At the outset of the English Action, BTA Bank sought and obtained two orders: first, a world-wide freezing order ("WFO") prohibiting Khrapunov from controlling his or Ablyazov's assets; and second, an order compelling Khrapunov's testimony as to those assets. Black Decl. ¶ 7. Khrapunov submitted applications to discharge both the WFO and the order compelling his testimony. In his discharge applications, Khrapunov alleged that BTA Bank repeatedly misled the English court and sought the order compelling his testimony for abusive purposes. *Id.* ¶ 9. In opposing Khrapunov's discharge applications, BTA Bank offered evidence provided by a Ukrainian lawyer, Olena Tyschenko. *Id.* ¶ 11.

Khrapunov contends that BTA Bank secured Tyschenko's cooperation unlawfully. Specifically, Khrapunov asserts that BTA Bank assisted in arranging Tyschenko's arrest and contributed to her subsequent mistreatment in custody. *See id.*; Opp. at 8-9. Khrapunov claims that two emails containing surveillance photographs of Tyschenko, dated August 29, 2013 and sent from peterpanmsk@gmail.com, support his allegations. Black Decl. ¶¶ 11-13. Khrapunov further alleges that an email was sent from the same address on December 18, 2013, which described and attached Tyschenko's contract to cooperate with BTA Bank. *Id.*; Opp. at 8-9. Khrapunov believes that Prosyankin, Managing Director and Member of the Management Board at BTA Bank, sent these emails. *See id.* Evidence that Prosyankin, or another BTA Bank employee, sent the emails would support Khrapunov's discharge applications: that evidence could substantiate that BTA Bank arranged for Tyschenko's arrest and mistreatment in order to present false evidence against Khrapunov and his associates in the English courts. Opp. at 8-9; Black Decl. ¶ 14-15.

In addition, Khrapunov contends that emails from pr.pisemnet@gmail.com show that BTA Bank flouted English court orders and procedural rules. *See id.* In a separate proceeding, BTA Bank obtained an order compelling Khrapunov's associate to testify under a "confidentiality

2

club," which is akin to a protective order. Black Decl. ¶ 16. Khrapunov claims to have since found, in the form of published, leaked emails, evidence that BTA Bank impermissibly shared Ablyazov's secret disclosures with the Republic of Kazakhstan. *Id.* ¶ 17. These emails were signed "Pavel," Prosyankin's first name. *Id*. Khrapunov cites two more emails sent from pr.pisemnet@gmail.com, dated February 14, 2012 and July 25, 2012, that he claims shared unpublished drafts of English court decisions in contravention of English civil procedure rules that prohibit the dissemination of draft court decisions before they are formally issued. *Id*. ¶ 18. Finally, Khrapunov alleges that a series of additional emails show that individuals associated with BTA Bank requested, discussed, and ultimately provided back-dated documents. *Id*. ¶ 19.

Khrapunov's position, both here and in the English courts, is that linking Prosyankin with the email address pr.pisemnet@gmail.com address supports his discharge applications by showing that BTA Bank acted unlawfully. Opp. at 11. In this regard, Khrapunov also seeks information pertaining to an email account kapisam@gmail.com email, to which a request for a backdated document was made by way of "cc." *Id*.; Black Decl. ¶ 21. According to Khrapunov, if Prosyankin used that account as well, it would show that high-level BTA Bank managers were kept up to date on interactions between BTA Bank and the Kazakhstani government. *See id.* That could, in turn, suggest that BTA Bank misrepresented its relationship with the Kazakhstani government in other proceedings. *See id.*

In response, BTA Bank denies that Prosyankin is or was affiliated with the email pr.pisemnet@gmail.com. *See* Mot. at 15-16. BTA Bank acknowledges, however, that this email address was most likely used by a similarly situated senior manager. *See id.* Khrapunov maintains that the best and perhaps sole avenue for discovering the actual identity of the individual sending the emails is to subpoena information associated with those accounts. *See* Opp. at 11-12.

**B. The Subpoena**

On August 16, 2017, Khrapunov applied *ex parte* for a subpoena to Google pursuant to 28 U.S.C. § 1782. Dkt. No. 1. In his subpoena application, Khrapunov sought the IP addresses and subscriber information associated with the three above-discussed email accounts: (1) pr.pisemnet@gmail.com; (2) peterpanmsk@gmail.com; and (3) kapisam@gmail.com. Dkt. No. 2.

In his application, Khrapunov explained that the information was relevant to the English Action, as described above. Dkt. No. 29 ("MJ Order") at 1-2.

On August 24, 2017, Judge Westmore granted in full Khrapunov's proposed subpoena. Dkt. No. 5. On October 1, 2017, Objectors filed a motion to quash. Dkt. No. 8. Khrapunov filed an opposition on October 16, 2017. Dkt. No. 19. On November 16, 2017, Judge Westmore held a hearing on the motion. Dkt. No. 28. After the hearing, Judge Westmore issued an order on Objectors' motion to quash, narrowing the subpoena's scope.

### C. Judge Westmore's Order

On November 22, 2017, Judge Westmore granted in part and denied in part Objectors' motion to quash. Order at 1. Specifically, the Court granted the motion to quash as to the subscriber information for peterpanmsk@gmail.com and the kapisam@gmail.com, and denied the motion as to pr.pisemnet@gmail.com. Order at 11. The Court denied the motion to quash as to the IP addresses for all three Gmail accounts. *Id.*

In reaching that holding, Judge Westmore considered the factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, and examined the disputed third and fourth *Intel* factors in detail. *See id.* at 6-10 (citing 542 U.S. 241, 264-65 (2004)). Under the fourth *Intel* factor, the court considered whether the requested information would be unduly intrusive and burdensome. Order at 6 (citing *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568 at *5 (N.D. Cal. Mar. 24, 2016) (finding undue intrusion where a request is "not narrowly tailored, request[s] confidential information, and appear[s] to be a broad fishing expedition for irrelevant information.")). Objectors contended primarily that the information Khrapunov sought was no longer relevant in the English proceedings, and that Khrapunov would use the information to harass Objectors. *Id.* at 6-7. In response, Khrapunov argued that Objectors failed to demonstrate that the requested information was irrelevant. *Id.* at 7. Khrapunov also maintained that he intended to use the information to show that BTA Bank misled the English courts. *Id.*

As to the subscriber information for peterpanmsk@gmail.com or for kapisam@gmail.com, Judge Westmore concluded that Khrapunov no longer needed that information. *Id.* at 8. In so

finding, Judge Westmore observed that Prosyankin had already admitted to exclusive use of those accounts. *Id*. at 8. As to pr.pisemnet@gmail.com, however, there remained a dispute regarding whether Prosyankin used the account. *Id.* As a result, Judge Westmore concluded that Khrapunov, in furtherance of his position in the English Action, could use the requested information to determine Prosyankin's involvement. *Id.* In response to Objectors' fears about continued harassment, Judge Westmore designated the information "local attorneys' eyes only." *Id*. at 8, 11. Acknowledging that Objectors' fears of harassment also contributed to their opposition to the release of the requested IP addresses, Judge Westmore narrowed the subpoena's scope to require production only for the years 2009 to 2014. *Id.*

Judge Westmore then turned to the third *Intel* factor, and considered whether the subpoena request was an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country of the United States." *Id.* at 9-10; *see Intel*, 542 U.S. at 264-65. Objectors argued that Khrapunov desired the requested information to circumvent English and American laws that are aimed to prevent hacking. Order at 10. In response, Khrapunov contended that his subpoena application supported his request, as he lawfully sought the subscriber information and IP addresses as opposed to hacking into the accounts to obtain it. *Id.* Judge Westmore agreed, concluding that she had "no reason to believe that the discovery request [was] an attempt to undermine the American and English court's laws and policies criminalizing hacking." Thus, she found that the third factor did not weigh in favor of quashing the subpoena. *Id*.

Though Judge Westmore found that these factors weighed in Khrapunov's favor, the Court adopted Khrapunov's suggestion at the hearing to designate any information obtained "local attorneys' eyes only." *Id.* at 11. Judge Westmore found that this exercise of discretion under Federal Rule of Evidence ("Rule") 45 could "ameliorate Objectors' concerns regarding potential harassment." *Id.* Khrapunov's attorneys were consequently required to: (1) independently evaluate the IP addresses associated with the three Gmail accounts; and (2) share the results of their analysis rather than the actual data. *Id*. As discussed, Judge Westmore also narrowed the subpoena to limit production to data from 2009 to 2014. *Id*.

5

## II. STANDARD OF REVIEW

The parties dispute the applicable standard of review. Rule 72 designates pretrial matters properly referred to a magistrate judge as either dispositive or non-dispositive. Rule 72 further requires that dispositive motions be reviewed de novo, and non-dispositive motions reviewed for clear error. Fed. R. Civ. P. 72(a)-(b). The Magistrates Act, 28 U.S.C. § 636(b)(1)(A)-(B), categorically defines such dispositive and non-dispositive motions and lists all dispositive motions on which magistrate judges can issue reports and recommendations that are reviewed de novo.

Objectors do not present Ninth Circuit authority to support their claim that a Section 1782 application is considered dispositive as a matter of law. Rather, the Ninth Circuit has adopted "a functional approach that looks to the effect of the motion" to determine whether a motion is dispositive or non-dispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015)*; see also Gomez v. United States*, 490 U.S. 858, 873-874 (1989) (holding that jury selection, though not one of the statutorily enumerated "dispositive" motions was "more akin" to a dispositive matter, and should be reviewed de novo). In line with that functional approach, district courts in this circuit have reviewed Section 1782 applications for clear error. *See, e.g.*, *Nikon Corp. v. GlobalFoundries U.S., Inc.*, No. 17-mc-80071-BLF, 2017 WL 4865549, at *2 (N.D. Cal. Oct. 26, 2017) (collecting cases, and noting that "the vast majority of cases to address the issue have" reviewed Section 1782 applications for clear error); *Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, *3 (N.D. Cal. Oct. 16, 2017) ("GlobalFoundries has not cited, and this Court has not discovered, a single case within the Ninth Circuit holding that a magistrate judge's order on a § 1782 application is a dispositive ruling subject to de novo review."); *In re Application of AIS GmbH Aachen Innovative Sols. & Abiomed Europe GmbH*, No. 5:16-MC-80094-EJD, 2017 WL 3115228, at *1 (N.D. Cal. July 21, 2017). Generally, these courts have reasoned that Section 1782 applications are "ancillary by their nature" and do not "dispose of . . . underlying claims or defenses." *Matter of a Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 7258483, at *3 (D. Nev. Nov. 17, 2015).

Notably, courts in this circuit have found magistrate judge orders non-dispositive in

analogous circumstances: where the order disposed of the sole matter in federal court, but did not dispose of the petitioner's "underlying claims or defenses" in the foreign tribunal. *See id.* (reviewing for clear error a magistrate judge's denial of a motion to compel given the parties' ongoing proceedings before the Dutch courts); *Nikon Corp.*, 2017 WL 4647753, *3 (reviewing for clear error a magistrate judge's grant of a subpoena requiring the production of documents for the parties' patent infringement proceedings in Germany and Japan). The Court finds that this reasoning applies equally here. Section 1782 applications are not among the eight listed dispositive motions in the Magistrates Act, and Objectors fail to describe why the order here is analogous to those listed. *See* 28 U.S.C. § 636(b)(1)(A). Though the information contained in the subpoena could support Khrapunov's contentions that BTA Bank misled the English courts, it would not resolve the underlying English proceedings. *See* Order at 7. To the extent that Objectors present applicable contrary authority, those decisions are not binding and arise largely from courts outside of this district. *Compare* Mot. at 10-11, *with* Opp. at 15-16;[3] *cf. N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 996 (N.D. Cal. 2004) (concluding that the court's order on the subpoena application before it was dispositive because that enforcement proceeding was "*not* ancillary" to a larger contempt proceeding) (emphasis added) . Thus, the Court applies a clear error standard to assess Judge Westmore's order.

## III. DISCUSSION

Under Rule 72, a district judge may set aside a magistrate judge's non-dispositive pretrial order only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "The magistrate's factual determinations are reviewed for clear error, and the magistrate's legal conclusions are reviewed to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). "When the court reviews the

---

[3] To support that Section 1782 actions are reviewed de novo, Objectors rely partly on *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566 (9th Cir. 2011). But the *In re Premises* court did not opine on the standard of review that applies to a district court's review of a magistrate judge's order under Section 1782. Rather, the Ninth Circuit there found that it had appellate jurisdiction over a district court's order denying a motion for a protective order pursuant to Section 1782 because that order was "'final' under 28 U.S.C. § 1291." *See id.* at 565-66. That issue is not presented here.

magistrate's determination of relevance in a discovery order, the Court must review the magistrate's order with an eye toward the broad standard of relevance in the discovery context. Thus, the standard of review in most instances is not the explicit statutory language, but the clearly implicit standard of abuse of discretion." *Id*. at 348 (internal quotation marks omitted). The Court can overturn the "magistrate's factual determinations only if the court reaches a definite and firm conviction that a mistake has been committed." *Id*. (citations and internal quotation marks omitted). "This standard is extremely deferential and the [m]agistrate's rulings should be considered the final decisions of the [d]istrict [c]ourt." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 3456942, at *1 (N.D. Cal. July 8, 2013) (internal quotation marks omitted) (alterations in the original).

Judge Westmore's order was well-reasoned and persuasive. She carefully considered the *Intel* factors, and weighed Objectors' claims of harassment against the potential utility of Khrapunov's requested information. *See* Order at 6-7. Judge Westmore found that a protective order would both protect Objectors and provide Khrapunov with the information he sought. *Id*. at 9. Judge Westmore's balanced precautionary measure leaves this Court without "a definite and firm conviction that a mistake has been committed." *Perry*, 268 F.R.D. at 348. Moreover, Judge Westmore's order narrowing Khrapunov's requested subpoena adequately resolves Objectors' claims of harassment. *See* Order at 7.

In addition to taking issue with Judge Westmore's order, Objectors argue that, as of this appeal, the information Khrapunov seeks is no longer relevant. *See* Mot. at 15-17; Dkt. Nos. 45-46 (submitting statements of recent decision). But the Court's role at this stage is to review the propriety of Judge Westmore's order, and for the reasons stated, the Court agrees with Judge Westmore's assessment of Khrapunov's need for the information. In addition, Khrapunov contends that he can still use this material to augment the record in the English proceedings, and/or for an appeal of the English Action. *See* Opp. at 1; Dkt. No. 46. Section 1782 does not require that the material be sought for "pending" or "imminent" proceedings; rather the proceedings for which the information is requested need only be "in reasonable contemplation." *See Intel*, 542 U.S. at 247. Thus, even if the likelihood of a successful appeal is minimal, it is

sufficient at this stage.  This is especially so given that the subpoena has been substantially narrowed to diminish the risk that the requested information is improperly used.

In summary, the Court finds Judge Westmore was well within her authority to grant Khrapunov's Section 1782 application.  There is accordingly no need to augment the administrative record to allow further evidence of Khrapunov's alleged impropriety in other federal court proceedings.  *See* Dkt. No. 33.  As discussed, Judge Westmore's order sufficiently accounts for the risk that Khrapunov could improperly use the requested information.

## IV. CONCLUSION

For these reasons, the Court **DENIES** Objectors' motion for de novo determination of Judge Westmore's order and **DENIES** Objectors' administrative motion to augment the record.

**IT IS SO ORDERED.**

Dated: 7/3/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge